## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

NORMAN GUISHARD,

Plaintiff,

v.                                                                9:19-CV-1475
                                                                  (MAD/ATB)
KATHLEEN GREGORY,

Defendant.

NORMAN GUISHARD, Plaintiff, pro se
JONATHAN E. SYMER, for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

### I.    Procedural History

Plaintiff filed the original complaint on November 27, 2019.  (Dkt. No. 1). Because plaintiff's application to proceed IFP was incomplete, the court issued an order closing the action and directing plaintiff to either pay the filing fee or submit a completed and signed IFP application.  (Dkt. No. 4).  Plaintiff complied with the court's order (Dkt. No. 5), and following its review of plaintiff's IFP application and complaint pursuant to  28 U.S.C. §§  1915, 1915A, the court issued a decision and order dated January 13, 2020, granting plaintiff's IFP application and dismissing plaintiff's complaint without prejudice.  (Dkt. No. 8).  Plaintiff filed an amended complaint on February 20, 2020.  (Dkt. No. 11) (Amended Complaint ("AC")).  On March 26, 2020, the court accepted the amended complaint for filing, allowing plaintiff's § 1983 claim

to proceed to litigation.  (Dkt. No. 12).  Specifically, plaintiff maintains a deliberate medical indifference claim against defendant Kathleen Gregory.[1]  (Dkt. No. 12 at 3).

Presently before the court is defendant Gregory's motion for summary judgment pursuant to F. R. Civ. P. 56, seeking dismissal of the amended complaint in its entirety. (Dkt. No. 64).  In response, plaintiff filed what this court interpreted as a motion to stay consideration of defendant Gregory's request for summary judgment, in order to pursue additional discovery.  (Dkt. No. 73).  On May 11, 2022, the court denied plaintiff's motion, recognizing that plaintiff's submissions[2] failed to raise any arguments relevant to the surviving claim against defendant Gregory.  (Dkt. No. 77).

## II.  **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

---

[1]There is a potential question as to whether plaintiff's medical indifference claim is governed by the Eighth Amendment or the Fourteenth Amendment, as further discussed below.

[2]Plaintiff also filed a sur-reply on May 9, 2022, which was ultimately stricken from the docket pursuant to the court's May 11, 2022 order.  (Dkt. Nos. 75, 77).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

"Even a pro se plaintiff . . . cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint."[3] *Saldana v. Loc. 32B-32J Serv. Emps. Int'l Union*, No. 03 CIV.1853, 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005) (citing *Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996)). "Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts." *Id.* (citing Fed. R. Civ. P. 56(e); *Jermosen v. Coughlin*, 877 F. Supp. 864, 867 (S.D.N.Y. 1999) (pro se plaintiffs must make proper evidentiary

---

[3] "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding pro se. In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit." *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 209-10 (N.D.N.Y. 2008).

showing in order to defeat summary judgment).  Evidence may be objectionable and inadmissible in connection with a summary judgment motion because, *e.g.,* it lacks foundation, is not based on personal knowledge of the source of the information, is irrelevant, or constitutes hearsay.  *See Payne v. Cornell Univ.*, No. 18-CV-1442 (GTS/ML), 2021 WL 39684, at *14 (N.D.N.Y. Jan. 5, 2021), *aff'd*, No. 21-109-CV, 2022 WL 453441, at *2 (2d Cir. Feb. 15, 2022) (Statements which "contain[] hearsay, conclusory assertions not based on personal knowledge, and statements contradicted by [plaintiff's] own previous deposition testimony" may be disregarded, in the discretion of the judge reviewing a summary judgment motion).

While courts are required to give due deference to a plaintiff's pro se status, that status "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). Generally, failure to respond to a motion for summary judgment results in summary judgment for the moving party, "once the court assures itself that Rule 56's other requirements have been met." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009)); *see also* N.D.N.Y. Local Rule 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion[.]").

"When the opposing party fails to respond to the moving party's Rule 56.1 Statement, the material facts contained in the moving party's statement are deemed

admitted as a matter of law." *Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S.*, No. 13-CV-0835, 2014 WL 4548619, at \*4 (S.D.N.Y. Sept. 15, 2014); *see also Genova v. County of Nassau*, 851 F. App'x 241, 244 (2d Cir. 2021)).  However, "a district court must ensure that there is support in the record for facts contained in unopposed Rule 56.1 statements before accepting those facts as true." *United States v. Abady*, No. 03-CV-1683, 2004 WL 444081, at \*3 (S.D.N.Y. Mar. 11, 2004) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140-43 (2d Cir. 2003)).  Moreover, a pro se plaintiff must be notified of the consequences of failing to respond to the motion. *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  In this case, plaintiff was sent a specific warning by the court of the consequences of a failure to respond.  (Dkt. No. 47).

## III.  Facts

### A.    Plaintiff's Allegations

#### 1.    Amended Complaint

Plaintiff alleges that he was arrested on or about November 6, 2018 in Kingston, New York, and subsequently confined to the Ulster County Jail ("Ulster").  (AC at 3). Plaintiff states that upon intake, he informed the medical staff at Ulster that he "suffered from severe sleep apnea and required the use of a sleep apnea machine," which he used at home.  (*Id.*).  Plaintiff further alleges that the medical staff "inquired as to whether the machine could be brought" to Ulster, however plaintiff "informed them that his property was recently lost . . . and he could not access the machine."  (*Id.*). Plaintiff then claims that defendant Kathleen Gregory, RN, the Health Service Administrator at Ulster, failed to "request information or medical records from . . .

plaintiff's primary care physician," and that there was no effort made by defendant Gregory to look into plaintiff's prior diagnosis of severe sleep apnea or seek the results of a prior sleep study. (*Id.*). Plaintiff states he was "informed that he would be referred to the doctor regarding his condition and his need for a CPAP machine." (*Id.*).

Plaintiff alleges that defendant Gregory was "charged with the responsibility for prioritizing and scheduling doctor's appointments." (*Id.*). Plaintiff eventually filed a grievance complaining of inadequate medical treatment in or around December 2018, to which defendant Gregory responded that plaintiff "was scheduled to see the doctor, despite knowing that severe obstructive sleep apnea posed a significant threat" to plaintiff's health. (*Id.* at 4). Plaintiff alleges he did not see a doctor until January 29, 2019, which was 84 days "after he entered the jail and first informed the staff that he needed a sleep apnea machine." (*Id.*). Plaintiff states that defendant Gregory was "well aware" of the lack of care being provided to him. (*Id.*).

On or about January 29, 2019, plaintiff was taken for a sleep study at Westchester Medical Center, which test confirmed his diagnosis of "severe obstructive sleep apnea." (*Id.*). Plaintiff alleges that on February 9, 2019, defendant Gregory informed him that "he would be placed in the . . . infirmary until he received a CPAP machine because of the danger of his sleep apnea." (*Id.*). He further claims that the adjustable infirmary beds would have provided "some treatment, safety and relief" from his symptoms, however, "despite assurances" from defendant Gregory, plaintiff was never transferred to the infirmary. (*Id.*). Plaintiff filed another grievance on February 12, 2019 complaining of inadequate medical treatment, which was forwarded to

6

defendant Gregory. (*Id.* at 4-5). Plaintiff alleges that defendant Gregory took "no action to address [plaintiff's] significant medical concerns." (*Id.* at 5). Plaintiff was eventually transferred to state custody "without ever having been provided the CPAP machine or adequate medial care for his severe obstructive sleep apnea" from Ulster. (*Id.*). On June 17, 2019, while in state custody, plaintiff underwent another sleep study which confirmed the same diagnosis. (*Id.*).

## 2. Plaintiff's Deposition

Plaintiff was deposed in July 2021, providing additional factual context to his allegations. (Plaintiff's Deposition Transcript ("Pl.'s Dep.")) (Dkt. No. 64-8). With respect to his medical conditions, plaintiff, who described his height as six feet, one inch tall, and weight as approximately 350 pounds at the time of the deposition, was taking regular medication to treat high blood pressure, cholesterol, asthma, "reflux," "pain," diabetes, and atrial fibrillation. (*Id.* at 16-19, 86-87).

At the time of the deposition, plaintiff used a CPAP machine for sleep apnea. (*Id.* at 16). He testified that he obtained the CPAP machine in 2019, after being transferred to Franklin Correctional Facility.[4] (*Id.* at 16, 27). Plaintiff had also been prescribed, and used, a CPAP machine for years prior to his November 2018 arrest and confinement to Ulster. (*Id.* at 37-38). He did not bring his own CPAP machine with him to Ulster upon his initial processing in November 2018, and was never provided a

---

[4]With respect to his detainment status, plaintiff testified that sometime after his arrest and initial confinement to Ulster in November 2018, he pled guilty to an underlying crime for which he was sentenced on or around March 15, 2019. (Pl.'s Dep. at 12-14). On March 28, 2019, plaintiff was transferred from Ulster to state custody at Downstate Correctional Facility, in accordance with his sentencing. (*Id.* at 14). In or about June 2019, plaintiff was transferred to Franklin Correctional Facility. (*Id.* at 10, 24).

CPAP machine during his confinement there. (*Id.* at 38-39, 54).

Specific to his claims against defendant Gregory, plaintiff testified that his cause of action against her "began" on February 4, 2019, and continued throughout his confinement at Ulster. (*Id.* at 42). Sometime before that date, plaintiff had been "sent out" of Ulster for a sleep study test. (*Id.* at 44). Following the sleep study test, it was plaintiff's understanding that a CPAP machine had been prescribed for him, although he did not know by who. (*Id.* at 54, 55-56). He also did not know whether a CPAP machine was ever ordered for him by defendant Gregory, or any other member of the medical staff at Ulster. (*Id.* at 56). However, plaintiff testified that he had at least five separate conversations with defendant Gregory about obtaining a CPAP machine. (*Id.* at 56-57). He testified that he saw defendant Gregory on "the majority" of occasions he went to the Ulster medical unit. (*Id.* at 57). According to plaintiff, defendant Gregory also stated on several occasions that she was going to transfer him to the medical unit for observation until a CPAP machine became available, however plaintiff was never transferred. (*Id.* at 58-59, 61-62). Plaintiff was not aware of what authority defendant Gregory had to transfer plaintiff to the medical unit, however he testified that he "thought medical supercede[d] everything." (*Id.* at 61). Plaintiff testified that he was not aware of what follow-up actions, if any, defendant Gregory took with respect to ordering plaintiff's CPAP machine. (*Id.* at 82-83).

Plaintiff testified that defendant Gregory was deliberately indifferent because she failed to direct the medical staff under her supervision to adequately treat his sleep apnea. (*Id.* at 83-84). Plaintiff further described his claims against defendant Gregory

to include her alleged failure to (1) properly forward his medical records to Downstate Correctional Facility upon transfer to state custody, (2) provide him with a CPAP machine, or (3) transfer him to the medical unit. (*Id.* at 94). According to plaintiff, defendant Gregory's failure to provide him with a CPAP machine at Ulster resulted in ongoing medical issues such as panic attacks, heart palpitations, "stress on [his] brain," and sleep interruption. (*Id.* at 85).

Plaintiff testified that upon transfer to state custody, and before he was ultimately provided a CPAP machine, he was not provided any blankets to elevate his head, extra pillows, or any other devices to address his symptoms because DOCCS "didn't believe [he] had sleep apnea." (*Id.* at 67-69). He testified to his belief that Ulster provided no medical records to Downstate Correctional Facility stating his diagnosis of sleep apnea. (*Id.* at 68, 70-71).

### B.   Defendant's Statement of Material Fact and Supporting Evidence

The defense's undisputed statement of material facts ("SOMF") (Dkt. No. 64-2) primarily relies on an affidavit of defendant Gregory ("Gregory Aff.") (Dkt. No. 64-9), affidavit of expert witness Robert W. Irwin, M.D. ("Irwin Aff.") (Dkt. No. 64-10), and plaintiff's medical records reflecting his treatment at Ulster. (SJM Ex. D) (Dkt. No. 64-7). The contents of plaintiff's medical records are set forth in more detail below, to the extent they are relevant to defendant Gregory's affidavit and the court's analysis of plaintiff's deliberate-medical-indifference claim against her.

In her sworn affidavit, defendant Gregory states that at all times relevant to plaintiff's complaint, she was a Registered Nurse and employed as the Health Services

Administrator ("HSA") at Ulster. (Gregory Aff. at ¶ 3). As the HSA, defendant Gregory's duties included nursing staff supervision, and addressing inmate grievances regarding health concerns. (Gregory Aff. at ¶ 4). She did not provide regular nursing care to incarcerated patients, nor did she have the authority to order diagnostic testing, assign medical cell placements, or prescribe durable medical devices; each of which required a physician's order. (Gregory Aff. at ¶¶ 4-5).

For the entirety of plaintiff's confinement at Ulster, his treating physician was Elizabeth Kulesza, M.D. (Gregory Aff. at ¶ 9). On January 17, 2019, Dr. Kulesza issued an order for a pulmonary consult for sleep apnea evaluation on behalf of plaintiff. (Gregory Aff. at ¶ 11; Ex. D. at 261). Based on this order, defendant Gregory obtained a preauthorization utilization review request from Dr. Kulesza, which was approved on January 18, 2019. (Gregory Aff. at ¶ 11; Ex. D. at 68). The sleep study was performed on January 29, 2019, and Dr. Kulesza performed a follow-up physical examination of plaintiff on January 31, 2019. (Gregory Aff. at ¶ 11, Ex. D at 65, 271-72). The February 4, 2019 sleep study report was subsequently received at Ulster and provided to Dr. Kulesza. (Gregory Aff. at ¶ 12; Ex. D. at 107-16). The report specifically required a prescription from Dr. Kulesza to obtain the CPAP device. (Gregory Aff. at ¶ 12; Ex. D at 107).

Plaintiff filed a grievance on February 14, 2019 regarding his medical care, complaining that he still did not have a CPAP machine and that he had not been transferred to the medical unit in the interim, as "promised." (Gregory Aff. at ¶ 13; AC Ex. D). On February 15, 2019, defendant Gregory met with plaintiff and informed him

that an evaluation and prescription by Dr. Kulesza was needed to obtain the CPAP machine. (Gregory Aff. at ¶ 13; AC Ex. F, G). On meeting with plaintiff, defendant Gregory observed that plaintiff was "in no distress with normal vital signs, talkative and without apparent medical issues." (Gregory Aff. at ¶ 14). Plaintiff "solely complained of interrupted sleep." (*Id.*). Defendant Gregory "arranged for an extra head elevation to assist [plaintiff] with his sleep interruption and thereafter followed for a CPAP prescription." (Gregory Aff. at ¶¶ 14, 16; AC Ex. G, H).

On follow-up with Dr. Kulesza, defendant Gregory "received authority to order [plaintiff's] CPAP machine on March 5, 2019. (Gregory Aff. at ¶17). That day, defendant George "arranged for the order for the CPAP machine to be faxed to Apria Healthcare, Inc. [("Apria")]" pursuant to Dr. Kulesza's prescription. (Gregory Aff. at ¶17; Ex. D. at 61).

Defendant Gregory met with plaintiff again on March 13, 2019. (Gregory Aff. at ¶ 15; Ex. D. at 283). Plaintiff inquired about the status of his CPAP machine, which he had yet to receive. (Gregory Aff. at ¶ 15). Defendant Gregory told plaintiff that, per Apria, the CPAP machine would arrive in three to five days. (Gregory Aff. at ¶ 15). Defendant Gregory further noted that plaintiff had been examined by Dr. Kulesza that day, and "had no acute medical issues nor did he have any signs of physical distress." (Gregory Aff. at ¶ 15; SJM Ex. D at 278). Dr. Kulesza did not order any intervention in the interim. (Gregory Aff. at ¶ 15).

On March 15, 2019, defendant Gregory "directed [the] faxing of [plaintiff's] prescription to Apria with [his] sleep apnea study report," as the CPAP machine had not

yet been delivered "as represented it would be[.]" (Gregory Aff. at ¶ 18; SJM Ex. D at 161). On March 20, 2019, because the CPAP machine had still not been received, defendant Gregory once again arranged for the prescription and sleep apnea study report to be faxed to Apria. (Gregory Aff. at ¶ 19; Ex. D. at 160).

Plaintiff was released from Ulster and transferred to state custody on March 28, 2019. (Gregory Aff. at ¶ 20; SJM Ex. D at 277). The CPAP machine was not delivered before plaintiff's transfer. (Gregory Aff. at ¶ 20). Defendant Gregory notes that plaintiff's transfer records explicitly report that plaintiff was diagnosed with sleep apnea. (Gregory Aff. at ¶ 20; SJM Ex. D at 248-49).

Defendant Gregory denies representing to plaintiff that she could arrange for his cell transfer to the medical unit. (Gregory Aff. at ¶ 15). Placement in the medical unit "specifically require[d] a physician['s] order," and Dr. Kulesza did not order medical cell placement for plaintiff for his sleep apnea. (*Id.*). Otherwise, defendant Gregory maintains that she "performed all functions within the scope of [her] authority and duties as a Registered Nurse and HSA," and "did not act with deliberate indifference to plaintiff's medical needs concerning his sleep apnea[.]" (Gregory Aff. at ¶¶ 21-22).

## DISCUSSION

**IV.** **Deliberate Indifference to Medical Needs**

### A.    **Legal Standard**

There is some uncertainty about plaintiff's detention status at the time of the alleged constitutional violations by defendant Gregory.[5] Whether plaintiff was a

---

[5]Plaintiff was confined at Ulster from November 2018 through March 2019. He testified that he pled guilty to the underlying crime for which he was detained on January 11, 2019, and that his

12

pretrial detainee or an incarcerated individual is relevant to his deliberate indifference claim, as it is well settled that a pretrial detainee's claims are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d. Cir. 2017) (citation omitted). The Supreme Court has distinguished between Eighth and Fourteenth Amendment excessive force claims, holding that a pretrial detainee need not demonstrate that an officer accused of using excessive force was subjectively aware that his use of force was unreasonable. *See Kingsley v. Hendrickson*, 576 U.S. 389, 391-95 (2015). In *Darnell*, the Second Circuit extended the *Kingsley* standard to a pretrial detainee's allegations related to unconstitutional conditions of confinement. *See Darnell*, 849 F.3d at 35. District courts in this circuit have since further applied the *Kingsley* standard to claims of deliberate indifference to serious medical needs brought under the Fourteenth Amendment. See *Villafane v. Sposato*, No. 16-CV-3674, 2017 WL 4179855, at *19 (E.D.N.Y. Aug. 22, 2017) ("District Courts in this circuit have applied *Kingsley* to claims for deliberate indifference to medical needs"); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 718 (S.D.N.Y. March 31, 2017) ("The reasoning of *Darnell* applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment");

---

claims against defendant Gregory did not accrue until February 4, 2019. (Pl.'s Dep. at 41-42). However, plaintiff also testified many times throughout his deposition that he was unsure of specific dates, and in his amended complaint plaintiff alleged that defendant Gregory's deliberate indifference included her failure to request plaintiff's pre-confinement medical records regarding his prior diagnosis and treatment for sleep apnea. (AC at 3). Defendant Gregory argues that summary judgment is warranted, regardless of whether plaintiff is considered a pretrial detainee or an incarcerated individual for purposes of the summary judgment motion.

*Torrez v. Semple*, No. 17-CV-1211, 2017 WL 3841686, at *3 (D. Conn. Sept. 1, 2017) ("[F]or a claim of deliberate indifference to mental health needs or unconstitutional conditions of confinement under the Fourteenth Amendment, a pretrial detainee can satisfy the subjective element by showing that the defendants 'knew, or should have known, that the condition posed an excessive risk to health or safety' ").  Out of special solicitude to plaintiff's pro se status, and because this court finds that summary judgment is warranted even under the less stringent standards applicable to a pretrial detainee, I will proceed to assess plaintiff's deliberate indifference claim under the Due Process Clause of the Fourteenth Amendment.

"[D]eliberate indifference to serious medical needs . . . constitutes the 'unnecessary and wanton infliction of pain,' . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal citation omitted). In order to state a claim based on constitutionally inadequate medical treatment, a plaintiff must satisfy a two-prong test. *Darnell,* 849 F.3d at 29. The first element is objective and "considers whether the alleged deprivation of adequate medical care [was] sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Salahuddin v. Goord*, 467 F.3d 263,

279 (2d Cir. 2006))(quotation marks omitted).[6]  The second, 'mental' element[7] ensures that the defendant acted with at least deliberate indifference to the challenged conditions.  *See Darnell*, 849 F.3d at 29; *see also Bell v. Carson*, No. 9:18-CV-783 (MAD/ATB), 2018 WL 5993686, at *2 (N.D.N.Y. Nov. 15, 2018).

### 1.    Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious."  *Salahuddin*, 467 F.3d at 279 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Determining whether a deprivation is sufficiently serious also involves two inquiries.  *Id.*  The first question is whether the plaintiff was actually deprived of adequate medical care.  *Id.*  Prison officials who act "reasonably" in response to the inmates health risk will not be found liable because the official's duty is only to provide "reasonable care."  *Id.* (citing *Farmer*, 511 U.S. at 844-47).

The second part of the objective test asks whether the purported inadequacy in

---

[6]Although the Supreme Court, in *Kingsley*, altered the standard for deliberate indifference claims, the objective prong remains the same whether analyzed under the Eighth or Fourteenth Amendments. *Figueroa v. Cty. of Rockland*, No. 16-CV-6519, 2018 WL 3315735, at *4 (S.D.N.Y. July 5, 2018).

[7]In *Darnell*, the Second Circuit cautioned that this element, commonly referred to as the "subjective prong," was better classified as a "*mens rea* prong" or "mental element prong."  The Court reasoned that the term "subjective prong" might be a misleading description because "the Supreme Court has instructed that "deliberate indifference roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)."  *Darnell,* 849 F.3d at 29 (citing *Farmer v. Brennan,* 511 U.S. 825, 836-37 (1994).  After the Second Circuit concluded that deliberate indifference should be defined objectively for a claim of a due process violation, other courts in this circuit have adopted the phrase "mental element prong" to more appropriately describe the relevant standard.  *See Durham v. Jones,* 9:17-CV-434 (LEK/DJS), 2019 WL 1103284, at *4 (N.D.N.Y. Jan. 23, 2019); *Richardson v. Corr. Medical Care, Inc.,* No. 9:17-CV-0420 (MAD/TWD), 2018 WL 1580316, at *5-6 (N.D.N.Y. Mar. 28, 2018).

the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)). If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

## 2.    Mental Element

Under the second prong of the deliberate indifference analysis, the court must consider whether defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [plaintiff] even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "As a consequence, the relevant *mens rea* is recklessness, which, for present purposes, 'more closely resembles recklessness as the term is used in the civil context' and 'does not

require a defendant to be subjectively aware of the harm resulting from his acts or omissions.'" *Singletary v. Russo,* No. 13-CV-04727, 2019 WL 1929819, at *10 (E.D.N.Y. Feb. 22, 2019) (citing *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017)) (citations omitted). Under this standard, "a defendant possesses the requisite *mens rea* when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the [plaintiff] would occur." *Feliciano*, 2017 WL 1189747, at *13 (citing *Darnell*, 849 F.3d at 35).

### B.    Application

#### 1.    Objective Element

Plaintiff alleges that he was deprived of timely and adequate sleep apnea treatment at Ulster, particularly the receipt of a CPAP machine, in violation of his constitutional rights.  It is undisputed that plaintiff did not receive a CPAP machine during his approximate four month confinement at Ulster, despite his consistent requests to obtain one.  Court's in this circuit have recognized that sleep apnea may constitute a medical need sufficiently serious enough to be constitutionally cognizable. *See Sassi v. Dutchess Cnty.*, No. 9:16-CV-1450 (TJM), 2019 WL 401951, at *6 (N.D.N.Y. Jan. 31, 2019) (listing cases).  However, because plaintiff's claim is ultimately for the delay in obtaining a CPAP machine, the seriousness analysis here focuses on the impact of the delay, and not plaintiff's sleep apnea alone. In this respect, the Second Circuit has ruled the serious medical condition standard satisfied in cases where, for example, "officials deliberately delayed care as a form of punishment,

ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years." *DeMeo v. Koenigsmann*, No. 11 Civ. 7099, 2015 WL 1283660, at *11 (S.D.N.Y. Mar. 20, 2015) (quoting *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233, 1999 WL 753142, at *2 (2d. Cir. 1999)).

Here, although the court appreciates that plaintiff may have suffered interruption to his sleep and consequential daytime fatigue, he has failed to show that the delay in obtaining a CPAP machine at Ulster exacerbated his sleep apnea to the point of degeneration or extreme pain. The medical record and plaintiff's testimony reflect that plaintiff treated for substantially the same medical conditions before, during, and after his confinement to Ulster. Plaintiff testified that, when he ultimately obtained a CPAP machine at Franklin Correctional Facility, the "sleep guy" stated that "the only thing [the CPAP machine is] going to do is make [his] life a little more easier." (Pl.'s Dep. at 84). Plaintiff's claim that he continues to deal with "things from not having [a CPAP] machine" at Ulster, such as heart palpitations and panic attacks, are unsubstantiated by the record. (Pl.'s Dep. at 85-89). Nor does plaintiff's unsupported suggestion that, as an incarcerated individual, he would not have been advised of any negative effects to his health, warrant merit. (Pl.'s Dep. at 92-93).

Otherwise, as defendant has shown through the submission of plaintiff's medical records, plaintiff's physical examinations conducted at Ulster generally revealed normal results, and there is no evidence that plaintiff suffered significant medical complications because of his allegedly untreated sleep apnea. Specifically, the record reflects that plaintiff's initial diagnostic laboratory test results upon intake to Ulster

were within normal limits, his diabetes evaluations showed normal values, and his blood pressure monitoring generally demonstrated evaluations in the normal range. (Gregory Aff. at ¶¶ 9, 15).  Plaintiff was transported to the emergency department on January 18, 2019 with complaints of chest pain, however there is nothing in the record suggesting a correlation between plaintiff's complaints and his lack of a CPAP machine.  (SJM Ex. D at 228-29).  Defendant Gregory affirmed that, upon her various meetings with plaintiff regarding the status of his CPAP machine, plaintiff was in no distress with normal vital signs, and without apparent medical issues.  (Gregory Aff. at ¶¶ 14-15).

Moreover, the results of plaintiff's January 29, 2019 sleep study indicated that, while plaintiff's severe obstructive sleep apnea manifested by respiratory arousals and respiratory events during sleep, he exhibited no cardiac arrhythmia or abnormal heart rate.  (SOMF at ¶¶ 37-39; SJM Ex. D at 107-16).  Ultimately, the report recommended plaintiff utilize a CPAP machine for improved sleep quality and avoid narcotics and driving, and further recommended weight loss to reduce the severity of plaintiff's symptoms.  (SJM Ex. D at 107).

As previously set forth, the record further contains the sworn affidavit of the defendant's medical expert in internal medicine and pulmonary disease, Robert W. Irwin, M.D.  Based on his review of plaintiff's medical history and the February 4, 2019 sleep study report, Dr. Irwin opined that plaintiff suffered no acute cardiovascular effects as a result of untreated sleep apnea at Ulster.  (Irwin Aff. at ¶ 20).  Otherwise, Dr. Irwin concluded that "the medical records show no harm to plaintiff arising from

his reported somnolence, the sole potential effect from his severe sleep apnea[,] and there simply is no basis to assert any long term negative effect on [plaintiff] or his health." (*Id.* at ¶ 33). Plaintiff's only evidence to the contrary are his own conclusory statements that his physical and mental health deteriorated, which fail to create a material issue of fact.

Based on the foregoing, plaintiff has failed to present any evidence from which a factfinder could conclude that the delay in obtaining a CPAP machine while confined to Ulster exacerbated his medical condition or presented a serious medical need or risk to his health, as required for satisfaction of the objective prong of the test for a violation of his constitutional right to adequate medical care. *See Santana v. Watson*, No. 13 Civ. 1549, 2014 WL 1803308, at *5 (S.D.N.Y. May 6, 2014) (failure to show that delay or interruption in the provision of a CPAP machine was sufficiently serious to constitute an Eighth Amendment violation where there was "no indication that [plaintiff's] health declined during the time he was without a CPAP machine, or that the temporary deprivation significantly affected his daily activities or caused him chronic or substantial pain"); *Nesmith v. Southern Health Partners*, No. 11-425, 2012 WL 426606, at *4 (W.D. Pa. Jan.10, 2012) (recommending dismissal with prejudice where even if plaintiff's sleep apnea was a serious medical condition, his section 1983 claim for delay in receiving a CPAP machine failed where his claims were limited to not sleeping well and occasional headaches and chest pains in the morning), *report and recommendation adopted*, 2012 WL 425986 (W.D. Pa. Feb. 9, 2012).

### 2.    Mental Element

Even assuming plaintiff had established that the delay in treatment for his sleep apnea at Ulster was "sufficiently serious," the mental prong of his medical deliberate indifference claim rests on whether defendant Gregory personally acted with a culpable state of mind in depriving him of such care. For the following reasons, this court concludes that plaintiff has failed to create a material question of fact as to whether defendant Gregory's conduct rose to the level of reckless, much less intentional, disregard of a serious risk to plaintiff's health.

At the outset, the medical records directly refute plaintiff's contention that defendant Gregory, or any other member of the medical staff at Ulster, failed to request or consider plaintiff's prior relevant medical history. Plaintiff was seen for both a medical intake screening and evaluation at the chronic disease clinic within approximately one week of his admission into Ulster, at which time he reported a history of, among other things, sleep apnea. (SOMF at ¶¶ 14, 18-22; SJM Ex. D at 252-53, 273-75, 276). Dr. Kulesza, the facility physician, initially ordered that plaintiff could bring his personal CPAP machine into Ulster for use, however it was eventually determined that plaintiff was unable to obtain the device. (SOMF at ¶ 26; SJM Ex. D at 265). In any event, by the end of November 2018 an authorization for plaintiff's past sleep studies and pulmonary records was processed, and plaintiff's 2014 sleep study report was returned to Ulster the same day. (SOMF at ¶¶ 29-30; SJM Ex. D at 26-27, 102-06). Thus, even if the record reflected that defendant Gregory was involved with, or responsible for, obtaining plaintiff's prior treatment records, which it does not,

plaintiff's allegations of deliberate indifference with respect to this issue are meritless.

Plaintiff's claim that defendant Gregory acted with deliberate indifference to his need for a CPAP machine is also unsupported by the record.  The record reflects that on January 17, 2019, Dr. Kulesza issued an order for a sleep study to evaluate plaintiff's sleep apnea.  (SOMF at ¶33; SJM Ex. D at 261).  It is undisputed that the practice at Ulster for provision of care required all such orders for diagnostic testing to come from Dr. Kulesza, and defendant Gregory did not retain such authority.  (SOMF at ¶ 28; Gregory Aff. at ¶¶ 5, 10).  To the extent defendant Gregory was responsible for processing Dr. Kulesza's orders, including that for a sleep study and ultimately for a CPAP machine, the record reflects that defendant Gregory reasonably carried out such duties without any evidence of reckless or intentional disregard to plaintiff's serious health needs.  For example, after receiving Dr. Kulesza's request for a sleep study, defendant Gregory obtained the appropriate approvals within a day, and the test took place less than two weeks later.  (SOMF at ¶¶ 34-36; Gregory Aff. at ¶ 11; SJM Ex. D at 67-68).

The record reflects that Dr. Kulesza reviewed the sleep study results on or about February 4, 2019, and authored a prescription for a CPAP machine in accordance with the sleep study recommendations by March 5, 2019.  (SOMF at ¶ 43;[8] SJM Ex. D at 63).[9]  Once defendant Gregory received authority from Dr. Kulesza to order the CPAP

---

[8]There appears to be a typographical error in the defendant's SOMF, which states that Dr. Kulesza reviewed the sleep study results on February 9, 2014.  (SOMF at ¶ 43).

[9]To the extent that Dr. Kulesza's purported delay in prescribing plaintiff's CPAP machine a month after reviewing the sleep study report might have suggested deliberate indifference, there is no evidence that it was attributable to defendant Gregory.

machine, she arranged for the order to be processed that same day. (Gregory Aff. at ¶ 17; SJM Ex. D at 61). Defendant Gregory followed-up with the medical device company on two separate occasions – March 15th and 20th – however despite her efforts the CPAP machine was not received at Ulster before plaintiff's March 28, 2019 transfer to Downstate Correctional Facility.

In both February and March 2019, defendant Gregory also met with plaintiff on different occasions in response to his complaints about the delay in obtaining a CPAP machine, in order to advise him of its status and address his concerns. (SOMF at ¶¶ 48-49, 50; Gregory Aff. at ¶¶ 13-14; SJM Ex. D at 283; AC Ex. D, G). Defendant Gregory also arranged to obtain extra blankets for head elevation to alleviate plaintiff's symptoms during the interim. (SOMF at ¶ 50; Gregory Aff. at ¶¶ 14, 16). Based on the aforementioned, defendant Gregory has established that she took reasonable efforts to obtain plaintiff's CPAP machine as was within her authority to do so. Because plaintiff has failed to establish that a reasonable jury could conclude that defendant Gregory acted with reckless or intentional disregard for plaintiff's need for a CPAP machine, summary judgment is appropriate.

Defendant Gregory has also established that she was not deliberately indifferent to plaintiff's serious medical condition in failing to transfer plaintiff to the medical unit for long term observation. The record establishes that placement in the medical cells specifically required a physician's order, which Dr. Kulesza did not have in place. Moreover, there is no evidence of record suggesting that such a transfer was medically necessary in plaintiff's case. (Gregory Aff. at ¶¶ 15, 21). Defendant Gregory has

sworn under oath that she at no time advised plaintiff that she could arrange for the purported transfer, and the longitudinal record does not support plaintiff's contention that she made such a "promise." (*Id.*).

Likewise, plaintiff's claim that defendant Gregory failed to notify Downstate Correctional Facility of his sleep apnea condition is plainly without merit. Even if this was the responsibility of defendant Gregory, which plaintiff has not established, the transfer record from Ulster to DOCCS clearly indicates to the receiving facility that plaintiff was diagnosed with sleep apnea. (SOMF ¶¶ at 64-65; SJM Ex. D at 248-49; Gregory Aff. at ¶ 20).

Finally, to the extent plaintiff attempts to impose liability against defendant Gregory in light of her capacity as a supervisor, this claim too fails. Recently, the Second Circuit reexamined the requirements for holding a supervisory defendant liable under section 1983, clarifying that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachman*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). More specifically, "[t]he focus is on what the supervisor did or caused to be done, 'the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable, which can be no less than the *mens rea* required of anyone else.' " *Id.* (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010)).

Here, it is unclear whether plaintiff is alleging that defendant Gregory is liable for her purported failure to properly supervise Dr. Kulesza, or rather some unidentified

members of the nursing staff who may have been involved in plaintiff's medical care at Ulster.  Nevertheless, because there is no basis for the assertion that defendant Gregory was directly involved in any constitutional violations relative to plaintiff's treatment, she may not be held liable for the perceived deliberate indifference of others on the Ulster medical staff.

WHEREFORE, based on the findings above, it is

RECOMMENDED, that defendant Gregory's motion for summary judgment (Dkt. No. 64) be GRANTED, and the amended complaint DISMISSED IN ITS ENTIRETY WITH PREJUDICE.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: August 11, 2022

Andrew T. Baxter
U.S. Magistrate Judge